FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 43

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEANETTE MEARS, individually and as Personal Representative for the ESTATE OF MERCEDES MEARS and as Limited Guardian for JADA MEARS; and MICHAEL MEARS, | No. 43121-1-II |
| Appellants/Cross Respondents, | PART PUBLISHED OPINION |
| v. | |
| BETHEL SCHOOL DISTRICT NO. 403, a municipal corporation; RHONDA K. GIBSON; and HEIDI A. CHRISTENSEN, | |
| Respondents/Cross Appellants. | |

BJORGEN, A.C.J. — This appeal from a defense verdict in a wrongful death case arises out of the untimely death of Mercedes Mears, a student at Clover Creek Elementary School. Mercedes[1] began having difficulty breathing shortly after arriving at school on October 7, 2008. Mercedes's sister Jada Mears informed Rhonda Gibson, the school's health clerk, who escorted Mercedes to the school's health room and called 911. By the time emergency rescue personnel arrived, Mercedes had stopped breathing and lost consciousness. Resuscitation efforts failed, and she died en route to the hospital.

Mercedes's parents, Jeannette and Michael Mears, subsequently filed this suit against the Bethel School District, school health clerk Gibson, and school nurse Heidi Christensen (collectively, "District"). They alleged that various omissions by the school's staff amounted to negligence and proximately caused Mercedes's death and that Mercedes's sister Jada could recover for the emotional distress of witnessing the death. After a long and strenuously litigated

---

[1] We use the Mears family members' first names where necessary for clarity. We intend no disrespect.

trial, the jury answered special interrogatories, finding each defendant negligent, but also finding

that the defendants' negligence did not proximately cause Mercedes's death. The court entered

judgment for the District on the jury's verdict. The Mears filed a motion for judgment as a

matter of law on the issue of proximate cause and for a new trial solely on the issue of damages,

or in the alternative, for a new trial on all issues, but the trial court denied the motion.

The Mears appeal, arguing that the trial court erred in denying their post-trial motions,

because substantial evidence does not support the jury's verdict as to proximate cause and

because defense misconduct deprived them of a fair trial. The District cross appeals, claiming

statutory immunity and arguing that the Mears' failure-to-rescue theory precludes Jada's

negligent infliction of emotional distress claim as a matter of law. We affirm, and therefore do

not address the District's cross appeal.

## FACTS

Mercedes suffered from persistent asthma and also had severe, life-threatening allergies.

Shortly after arriving at school with her sister Jada and their friend Henry Dotson, Mercedes

began having difficulty breathing. She sat down on a bench outside the school, saying she felt

sick. Jada ran inside and returned with Gibson, the school's health clerk, who escorted Mercedes

inside.

Mercedes's asthma had frequently caused her to visit the school's health room, where the

school kept an inhaler prescribed by her doctor, Lawrence Larson, containing an asthma

medication known as Albuterol. Gibson and other staff knew of Mercedes's asthma and

understood that Mercedes also had serious food allergies. Of those present during the emergency

2

that led to Mercedes's death, those who formed an opinion on the matter testified that they believed Mercedes was having an asthma attack, not an allergic reaction to food.

As Mercedes's condition deteriorated, her EpiPen sat in a cupboard a few feet away. An EpiPen is a medical device that allows someone with no medical training to safely inject herself or another with a pre-measured dose of epinephrine, a potent hormone commonly known as adrenaline. MARJORY SPRAYCAR, STEDMAN'S MEDICAL DICTIONARY 585 (26th ed. 1995). Mercedes's doctor had prescribed the EpiPen, and her parents had delivered it to the school along with a signed permission form and an order from the doctor to dispense the EpiPen to Mercedes in the event of an "allergic emergency." Ex. 454.

At trial, undisputed expert testimony established that an injection of epinephrine by the time Mercedes lost consciousness probably would have saved her life. Verbatim Report of Proceedings (VRP) (Oct. 20, 2011 (Lawrence Larson) at 48-49; VRP (Oct. 18, 2011) (Michael Freeman) at 30; VRP (Oct. 18, 2011) (Russell Hopp) at 67, 74-75; VRP (Nov. 15, 2011). Expert testimony similarly established that, had school personnel initiated cardiopulmonary resuscitation (CPR) when Mercedes became unresponsive, she likely would have survived. The District's experts conceded that administering epinephrine posed no significant risk of harmful side effects and that an asthma attack may qualify as an "allergic emergency." VRP (Nov. 16, 2011) (Anthony Montanaro) at 73.

The notebook containing the doctor's orders for using the Albuterol inhaler and the EpiPen, along with Mercedes's "emergency health care plan," were nearby in the health room. VRP (Oct. 17, 2011) (Peggy Walker) at 87-88. School nurse Christensen had prepared the emergency health care plan, pursuant to state law and school district policy, so that staff without

3

formal medical training could appropriately respond should Mercedes have a medical emergency. The school staff present did not open the notebook or consult the documents inside it. Those present also did not attempt to perform CPR. Instead, as Mercedes's condition worsened, they again called 911, attempted to administer additional doses of Albuterol, tried to make Mercedes more comfortable, and waited for the ambulance to arrive.

At trial, the parties sharply disputed the cause of Mercedes's death. The medical examiner who performed the autopsy had attributed her death to asthma, and experts called by the District concurred. The District presented expert testimony that "uncontrolled asthma" also sometimes results in sudden death. VRP (Nov. 16, 2011) (Montanaro) at 35-37. The Mears presented opinion testimony from Dr. Larson and a forensic pathologist that Mercedes had more likely died of anaphylaxis, a sudden and often fatal allergic reaction that affects various body functions, including the respiratory system.

The District cross-examined Dr. Larson extensively, over the Mears' objection, concerning Flovent, an inhaled corticosteroid medication used for long-term control of asthma, which had been prescribed for Mercedes. The day after Dr. Larson's testimony, the Mears offered a curative instruction concerning the Flovent testimony. A few days later, the Mears moved to strike all testimony concerning Flovent and proposed another curative instruction on the issue. The trial court refused to give the Mears' proposed instructions, instead giving a different instruction allowing consideration of Flovent only for the limited purpose of Mercedes's prior asthma condition.

After the close of evidence, the Mears moved for judgment as a matter of law on the issue of proximate cause as to certain undisputed items of damages. The trial court granted the Mears'

motion in part, and included the undisputed items as mandatory on the damages portion of the verdict form. The court also ruled that neither an infection nor the nonuse of Flovent proximately caused Mercedes's death and prohibited argument to the contrary, but allowed the District to argue that Mercedes died of uncontrolled asthma and that Flovent was important in controlling asthma.

The jury returned answers to special interrogatories finding Gibson, Christensen, and the school district all negligent, but also finding that their negligence did not proximately cause Mercedes's death. The trial court entered judgment for the District on the jury's verdict.

The Mears moved for judgment as a matter of law as to proximate cause and a new trial limited to the issue of damages, or in the alternative, for a new trial as to all issues. The trial court denied the motion. The Mears timely appealed, and the District cross appealed. Because we affirm the judgment, we do not reach the issues raised in the District's cross appeal.

## ANALYSIS

### I. INTERNAL CONSISTENCY OF THE JURY'S ANSWERS ON THE VERDICT FORM AND THEIR CONSISTENCY WITH THE EVIDENCE

The Mears initially contend that the trial court erred in denying their motion for a new trial and, alternatively, for judgment as a matter of law, because the jury's verdict was inconsistent and contrary to the evidence. The District contends that the Mears base their argument on a false premise and that the verdict "is consistent and supported by substantial evidence in the record." Br. of Resp't at 49. We agree with the District.

### A.     Standard of Review

We review de novo a trial court's denial of a motion for judgment as a matter of law. *Bishop of Victoria Corp. Sole v. Corporate Bus. Park, LLC*, 138 Wn. App. 443, 454, 158 P.3d

1183 (2007). In that review, we engage in the same inquiry as the trial court, admitting the truth of the nonmoving party's evidence and all reasonable inferences that can be drawn from it. *Faust v. Albertson*, 167 Wn.2d 531, 537, 222 P.3d 1208 (2009). A motion for judgment as a matter of law is properly granted only when the court can find, as a matter of law, that there was no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001).

We review an order denying a motion for a new trial for abuse of discretion by the trial court. *See Aluminum Co. of Am. v. Aetna Cas. & Sur. Co. (ALCOA)*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000). Generally, a trial court abuses its discretion in denying a motion for a new trial if "'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.'" *ALCOA*, 140 Wn.2d at 537 (quoting *Moore v. Smith*, 89 Wn.2d 932, 942, 578 P.2d 26 (1978)). However, the deference usually shown a trial court's denial of a new trial does not apply when the court based the decision on an issue of law. *Ayers v. Johnson & Johnson Baby Prod. Co.*, 117 Wn.2d 747, 768, 818 P.2d 1337 (1991). Review of a denial of a new trial based on an issue of law is de novo. *Ayers*, 117 Wn.2d at 768; *see* CR 59(a) (ground for new trial).

A trial court may grant a new trial after the jury has returned a verdict when "there is no evidence or reasonable inference from the evidence to justify the verdict." CR 59(a)(7). A trial court abuses its discretion by denying a motion for a new trial where the verdict is contrary to the evidence. *Palmer v. Jensen*, 132 Wn.2d 193, 198, 937 P.2d 597 (1977). When a litigant unsuccessfully moves for a new trial on the ground that the verdict was contrary to the evidence, we review the record to determine whether sufficient evidence supported the verdict. *Palmer*,

132 Wn.2d at 197-98. In this analysis we consider the evidence in the light most favorable to the nonmoving party. *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980). "[S]ubstantial evidence" is required, meaning evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Hojem*, 93 Wn.2d at 145 (internal quotation marks omitted). Although reasonable inferences from the evidence suffice to support a verdict, "mere theory or speculation" alone does not. *Hojem*, 93 Wn.2d at 145.

In evaluating a claim of inconsistent findings on a special verdict form, we must reconcile the jury's answers and we do not substitute our judgment for the jury's. *Estate of Stalkup v. Vancouver Clinic, Inc., PS*, 145 Wn. App. 572, 586, 187 P.3d 291 (2008). If the answers on the verdict form reveal a clear contradiction, however, such that we cannot determine how the jury resolved an ultimate issue, we will remand for a new trial. *Stalkup*, 145 Wn. App. at 586. A jury verdict finding a defendant negligent, but also finding that the negligence did not proximately cause the plaintiff's injuries, "is not . . . inconsistent if there is evidence in the record to support a finding of negligence but also evidence to support a finding that the resulting injury would have occurred regardless of the defendant's actions." *Stalkup*, 145 Wn. App. at 587 (citing *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 209, 667 P.2d 78 (1983)).

B.    Whether the Mears Have Preserved the Issues for Review on Appeal

As a preliminary matter, the District urges us not to consider the alleged inconsistency because the Mears did not raise it when the court polled the jury and thus failed to preserve the issue. The relevant court rule provides that

> [w]hen the answers [to the jury interrogatories] are inconsistent with each other
> and one or more is likewise inconsistent with the general verdict, judgment shall

7

not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

CR 49(b). We have declined to consider challenges based on seemingly inconsistent answers to jury interrogatories where the appealing party did not raise the alleged inconsistencies prior to the discharge of the jury. *Gjerde v. Fritzsche*, 55 Wn. App. 387, 393, 777 P.2d 1072 (1989) ("We decline to consider this challenge to the jury interrogatories, because Gjerde waived the issue below by failing to bring the inconsistency in the answers to the interrogatories to the attention of the court at the time the jury was polled."); *accord Minger v. Reinhard Distrib. Co., Inc.*, 87 Wn. App. 941, 946, 943 P.2d 400 (1997); *State v. Barnes*, 85 Wn. App. 638, 668, 932 P.2d 669 (1997).

In other cases, however, we have addressed the merits of claims based on inconsistency in a verdict despite the failure to raise the issue prior to the discharge of the jurors. In *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 510-11, 814 P.2d 1219 (1991), for example, Division One of our court rejected a similar waiver argument and reached the inconsistency claim, distinguishing *Gjerde* on the ground that the record there showed that counsel had immediately recognized the inconsistency but "deliberately remained silent" in order to obtain a second chance with a different jury.[2]

---

[2] The *Gjerde* court did appear to limit its holding to the factual circumstances presented:

> "If counsel who had submitted the questions . . . raised no objection to the discharge of the jury, we can, at least under the circumstances of this case, see no reason why he should be permitted to try his luck with a second jury."
>
> . . . .
>
> Such silence in the face of actual knowledge of an inconsistency at a time it could be cured waives the issue on appeal.

55 Wn. App. at 394 (quoting *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir. 1987)). Although the *Minger* court purported to follow *Gjerde*, it did not recognize *Gjerde*'s limitation to its circumstances or discuss actual knowledge of the inconsistency. *Minger*, 87 Wn. App. at 945-46.

We do not attempt to resolve these divergent approaches to the waiver question here. In order to provide guidance to trial courts faced with inconsistent verdict claims, and because we ultimately conclude that no inconsistency appears in the verdict, we address the Mears' claim.

## C.     The Trial Court Did Not Err in Denying the Motion for Judgment as a Matter of Law and for a New Trial Based on Inconsistency in the Verdict or Its Inconsistency with the Evidence

We begin with the parties' dispute over the proper scope of our inquiry. Specifically, they disagree as to whether the jury's decision constituted a general or a special verdict, a question upon which the proper analysis of the issue depends.

The Mears contend that the jury's answers to the questions on the verdict form amounted to a general verdict because "specific interrogatories were not provided for a determination of each specific allegation of negligence" the Mears had made. Br. of Appellant at 48. Because "[a] general verdict is that by which the jury pronounces generally upon all or any of the issues," CR 49(-), the Mears argue that "it must be presumed that the jury found in [the Mears'] favor with respect to all claims of negligence set forth within the pleadings and proof presented" at trial, including the allegation that the District negligently failed to administer epinephrine or perform CPR. Br. of Appellant at 49. The Mears then argue that, because they presented unrebutted expert testimony that Mercedes would likely have survived had the District taken either of these measures, the jury's finding as to proximate cause has "no factual basis within the evidence." Br. of Appellant at 50 (emphasis omitted).

The District, on the other hand, characterizes the "central question" as "whether the answers in the special verdict are consistent" according to "some plausible scenario" supported by substantial evidence in the record, pointing out that courts must seek to harmonize a seemingly inconsistent jury verdict. Br. of Resp't at 32-33. The District thus argues that, as long

as the record contains substantial evidence from which the jury could reasonably have found that the defendants committed negligent acts or omissions that did not proximately cause Mercedes's death, the jury's verdict must stand. The District maintains that the evidence and instructions in the case allowed for a number of plausible scenarios under which the jury could find the District negligent, but also find that the negligent acts or omissions did not proximately cause Mercedes's death.

At the outset, we cannot accept the Mears' argument that the jury's finding of negligence requires us to presume that it agreed with each and every allegation the Mears made that some act or omission by the District breached the duty of due care. As a matter of logic, a plaintiff who prevails on a negligence claim in an auto accident case, for example, after presenting evidence that a defendant both drove at excessive speed and failed to take a driver's education course in high school, has not established that the jury found that the defendant's lack of training proximately caused the accident.

Turning to the characterization of the verdict, we have treated verdict forms with substantially similar interrogatories as special verdicts. *Stalkup*, 145 Wn. App. at 587 ("The trial court submitted a two-part special verdict form to the jury, and the jury found that the power company was negligent but that its negligence was not a proximate cause of the plaintiff's injuries."). Our Supreme Court's decision in *Guijosa*, 144 Wn.2d at 918, however, makes clear that neither a court's labeling a document as a special verdict form nor its inclusion of interrogatories in the verdict form is dispositive. The *Guijosa* court rejected our characterization of a verdict form that included interrogatories for each defendant with respect to each claim as a

special verdict form, holding instead that, because the jury's answers resolved ultimate questions regarding particular claims, they constituted multiple general verdicts. 144 Wn.2d at 918.

At first blush, the answer to the first question the verdict form posed to the jury here, "Were any of the defendants negligent?", might appear to resolve an ultimate issue with respect to the Mears' negligence claim. Clerk's Papers (CP) at 3196; *see Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002) ("The elements of negligence are duty, breach, causation, and injury."). The word "negligence," however, also has the more limited meaning of "conduct that falls below the legal standard established to protect others against unreasonable risk of harm." BLACK'S LAW DICTIONARY 1133 (9th ed., 2009). The context makes clear that the trial court intended the jury to understand this question to refer only to this more limited definition of negligence, corresponding to the duty and breach elements of a negligence claim; otherwise, the court would not have needed to include an interrogatory on proximate cause. As such, the answer to the interrogatory does not ultimately resolve any particular claim; instead, it merely establishes two elements of a claim. Thus, the jury's findings here amounted to a special verdict.

Having established that we are considering a special verdict, our Supreme Court's analysis in *Brashear*, 100 Wn.2d at 209, controls. Brashear had alleged four different acts of negligence at trial, including failure to warn, and "[t]he jury found, in answer to interrogatories, that Puget Power was negligent but that its negligence was not the proximate cause of [Brashear's] injuries." *Brashear*, 100 Wn.2d at 206. The trial court denied Brashear's motion for judgment as a matter of law and entered a judgment for Puget Power on the jury's verdict. *Brashear*, 100 Wn.2d at 206. We reversed and entered judgment for Brashear, holding the verdicts inconsistent and concluding that the evidence presented failed to adequately support the

finding that Puget Power's breach did not proximately cause Brashear's injuries. *Brashear*, 100 Wn.2d at 206. Our Supreme Court, however, held that "[a]lthough the verdict appears inconsistent when analyzed, as the Court of Appeals did, using the first three theories of negligence, . . . the strong presumption in favor of jury verdicts . . . requires a contrary result." *Brashear*, 100 Wn.2d at 209. Because the failure-to-warn allegation did not necessarily conflict with the jury's finding of no proximate cause, our Supreme Court found no inconsistency, and would have reinstated the verdict but for the trial court's defective proximate cause instruction. *Brashear*, 100 Wn.2d at 209.

We followed *Brashear* in *Stalkup*, a medical malpractice case in which the plaintiff alleged numerous negligent acts and omissions, and the jury, using a form indistinguishable from that used here, found the defendant negligent but also found that the defendant's negligence did not proximately cause the injuries. *Stalkup*, 145 Wn. App. at 582. The trial court ordered a new trial based in part on a perceived inconsistency in the verdict. *Stalkup*, 145 Wn. App. at 586. We reversed, holding that "the trial court erred when it granted a new trial based on the 'inconsistency' of the jury verdict" because "there was more than one scenario under which the jury's findings of negligence but lack of proximate cause can be reconciled." *Stalkup*, 145 Wn. App. at 591.

These decisions leave no room for the Mears' contention that the jury's finding as to negligence requires us to assume that the jurors agreed that every act or omission alleged by the Mears had breached the due care standard. The trial court therefore did not err in denying the Mears' motion for judgment as a matter of law on the issue of proximate cause. Further, as long as the Mears alleged that each defendant committed some act or omission that the jury could

12

properly have found to be negligent, but not a proximate cause Mercedes's death, no inconsistency would lie in the verdict, and it would have been within the trial court's discretion to deny the alternative motion for a new trial as to all issues. We examine now whether evidence was submitted from which the jury could have reasonably concluded that the acts or omissions alleged by the Mears against each defendant were negligent but did not lead to Mercedes's death.

With respect to defendant Gibson, the Mears presented evidence that Gibson did not attempt to consult Mercedes's emergency health care plan or contact a school nurse during Mercedes's medical emergency, and the Mears' counsel argued in closing that these omissions violated the duty of due care under the circumstances. The jury could have agreed that these omissions established breach of duty, but still reasonably concluded that, had Gibson called the nurse and consulted the plan, she still would not have administered epinephrine or initiated CPR and Mercedes still would have died.

With respect to defendant Christensen, the Mears presented voluminous evidence concerning Christensen's failure to properly complete students' emergency health care plans, including Mercedes's, as well as other important administrative tasks. Again, the Mears' counsel argued that these failures breached the duty of due care. Certainly, the jury could have agreed that this evidence established a breach of duty, but still reasonably concluded that, even had Christensen timely completed all her health care plans, the staff present that day could not have been expected to administer epinephrine or begin CPR.

Having found Gibson and Christensen breached the duty of due care, the trial court's instructions required the jury to impute those breaches to the District as a matter of law. Thus,

13

the jury could also have imputed to the District the alleged breaches just discussed and still reasonably have found that those breaches did not proximately cause Mercedes's death. Alternatively, the jury could have agreed that the District breached a duty by not properly supervising Christensen, as the Mears' counsel argued, and still reasonably concluded that better supervision would not have helped Mercedes.

The jury's findings in this case do not clearly contradict themselves, and substantial evidence in the record supports them. The trial court did not err in denying the Mears' motion for judgment as a matter of law or for a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## II. ATTORNEY MISCONDUCT AND THE TRIAL COURT'S EVIDENTIARY RULINGS

The Mears also contend that the trial court erred in refusing to grant a new trial due to various acts of misconduct by the District in the course of the litigation, as well as due to the trial court's improper admission of evidence. The Mears base these claims on the District's (1) introduction of evidence concerning Mercedes's use of the asthma medication Flovent;[3] (2) use of Jeanette's counseling records and Jada's counseling and school discipline records; (3) eliciting other testimony intended to improperly engender among the jurors antipathy toward Jeanette;

---

[3] The District contends that the Mears "are not arguing that the judge's ruling [allowing testimony regarding Flovent] was incorrect . . . [but instead] that the use of the admitted evidence by the District's attorneys constituted attorney misconduct." Br. of Resp't at 53 n.37. The Mears' third assignment of error plainly addresses the court's admission of the Flovent testimony, however, and the Mears explicitly argue the point in their opening brief. Br. of Appellant at 77 (arguing that the Flovent testimony "issue clearly not only involves an erroneous admission of evidence, but also clearly involves misconduct of counsel" and citing CR 59(a)(8), concerning errors of law occurring at trial). We address the claim on its merits.

14

and (4) coaching witnesses to give nonresponsive answers to the Mears' questions. We first

address the appropriate framework for analysis, then address each claimed error or incident of

misconduct in turn.

A.     Standard of Review

According to CR 59(a):

> On the motion of the party aggrieved, a verdict may be vacated and a new trial granted. . . .  Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
> (2) Misconduct of prevailing party . . .;
> . . . .
> (8) Error in law occurring at the trial and objected to at the time by the party making the application; or
> (9) That substantial justice has not been done.

Thus, in addition to the requirements specific to each enumerated ground, the Mears must show

that a substantial right was materially affected.

We review a trial court's ruling on a motion for a new trial based on attorney misconduct

in a civil case for abuse of discretion, applying a more deferential standard than in the criminal

context, one that "generally upholds trial court decisions." *ALCOA*, 140 Wn.2d at 539. Our

Supreme Court has articulated the standard for granting a new trial based on attorney misconduct

in a civil case as follows:

> "A new trial may properly be granted based on the prejudicial misconduct of counsel.  As a general rule, the movant must establish that the conduct complained of constitutes misconduct (and not mere aggressive advocacy) and that the misconduct is prejudicial in the context of the entire record. . . .  The movant must ordinarily have properly objected to the misconduct at trial, . . . and the misconduct must not have been cured by court instructions."

15

*ALCOA*, 140 Wn.2d at 539-40 (quoting 12 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE §

59.13[2][c][i][A] at 59-48 (3d ed.1999)). Where an attorney commits misconduct "so flagrant

that no instruction could have cured the prejudicial effect," however, failure to timely object does

not preclude appellate review. *Sommer v. Dep't of Soc. & Health Servs.*, 104 Wn. App. 160,

171, 15 P.3d 664 (2001) (citing *Warren v. Hart*, 71 Wn.2d 512, 518-19, 429 P.2d 873 (1967)).

We also generally review a trial court's decision to admit or exclude evidence for abuse

of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). Evidence

that has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence" is admissible unless its admissibility is otherwise limited. ER 401, 402. "The

threshold to admit relevant evidence is low and even minimally relevant evidence is admissible."

*State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006). The failure to object to the

admission of evidence at trial generally precludes appellate review. *Faust*, 167 Wn.2d at 547

(citing ER 103(a)(1)). Even a party who timely objected in superior court, however, "may only

assign error in the appellate court on the specific ground of the evidentiary objection made at

trial." *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

B.     The Trial Court Did Not Err in Denying the Motion for a New Trial Based on the Flovent
Evidence

The Mears contend that the District's use of evidence concerning Mercedes's use of

Flovent amounted to misconduct warranting a new trial because it (1) violated a number of the

trial court's orders in limine and (2) amounted to "a clearly transparent effort to try to prejudice

the jury against Jeanette Mears . . . by trying to create an impression that she permitted Mercedes

16

to be non-compliant with Dr. Larson's orders, and that such non-compliance ultimately caused or contributed to Mercedes'[s] death." Br. of Appellant at 70. We disagree.

In response to the allegation that its use of Flovent evidence violated a number of the trial court's orders in limine,[4] the District correctly points out that the court specifically addressed the Flovent evidence and ruled it admissible. Presenting arguably relevant evidence in accordance with an explicit ruling of the trial court cannot serve as the basis for a claim of attorney misconduct.

The Mears also claim that the District's summary of Flovent prescription refills in its opening statement[5] violated the trial court's order on their motion in limine 4.34, which required the parties to show any demonstrative exhibits to opposing counsel before showing them to the jury. While the failure to show this exhibit to the Mears' counsel does violate the court's order, the Mears made no contemporaneous objection and the court admonished the jury to consider the

---

[4] Specifically, the Mears point to the trial court's orders on their motions in limine 4.2.1-4.2.4, prohibiting claims that the Mears themselves were contributorily negligent; 4.7-4.7.3, excluding evidence not disclosed during discovery; 4.13 excluding evidence concerning unrelated, asymptomatic medical conditions; 4.14.1, excluding medical testimony not supported by an appropriate expert; 4.15.8, prohibiting argument or testimony that the Mears failed to provide medical care to Mercedes; and 4.33, prohibiting "speculative questions that are not based upon reasonable medical, psychiatric, psychological certainty." CP at 2769, 2792.

[5] The Mears allege that the District's illustrative exhibits purporting to summarize the pharmacy records of Mercedes's Flovent refills misrepresented the actual number of Flovent canisters dispensed because the District incorrectly assumed that the pharmacy dispensed only one canister per refill. Although the trial court admitted the prescription and the pharmacy records into evidence, neither those documents nor the relevant portion of Jeanette's testimony appear in the record. The only discussion of this in the record consists of a similar argument the Mears' counsel made to the trial court, outside the presence of the jury, to which the District did not respond. We do not consider matters not in the record, and the appellant bears the burden of providing a record adequate for review of the issues raised. If the appellant fails to meet this burden, the trial court's decision must stand. RAP 9.2; *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988). Thus, we do not consider whether the District's exhibits accurately summarized the pharmacy records.

Flovent evidence only for a proper purpose. Thus, assuming their motion in limine properly preserved the issue, the Mears cannot show that the misconduct was "prejudicial in the context of the entire record" such that the court's subsequent limiting instruction did not cure it. *ALCOA*, 140 Wn.2d at 539. The District's failure to show the exhibit to opposing counsel, while misconduct, does not require reversal.

The Mears argue also that evidence concerning Mercedes's Flovent usage was irrelevant, relying on a line of cases holding that "unrelated medical history is irrelevant, thus inadmissible in an action for personal injury, or death." Reply Br. of Appellant at 14 (citing *e.g.*, *Little v. King*, 160 Wn.2d 696, 705, 161 P.3d 345 (2007); *Harris v. Drake*, 152 Wn.2d 480, 494, 99 P.3d 872 (2004)). These cases hold that such evidence has no relevance because, "[w]hen an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preexisting condition is not a proximate cause of the resulting damages." *Harris*, 152 Wn.2d at 494.

The cases cited have no bearing on the issue here. The Mears did not claim that Mercedes's asthma was asymptomatic until conduct attributable to the District exacerbated it. In fact, uncontroverted evidence at trial showed that Mercedes suffered from persistent asthma and had visited the health room due to asthma many times during the year preceding her death, including the weeks immediately prior.

The District claimed that its employees correctly perceived that Mercedes's medical emergency was an asthma attack and did everything that state law permitted to assist her. The Mears contended that Mercedes suffered an allergic emergency and presented expert testimony that Mercedes actually died of anaphylaxis. These experts based their opinions partly on the

suddenness of Mercedes's death. The District presented expert testimony that "uncontrolled asthma" sometimes results in sudden death. VRP (Nov. 16, 2011) (Montanaro) at 35-37. Mercedes's treating physician admitted that consistent use of controller medications reduces the likelihood of "major [asthma] episodes" resulting in "bad outcomes," and that he had prescribed Flovent as Mercedes's controller medication. VRP (Oct. 20, 2011) (Larson) at 107-08.

Thus, the cause of death was a factual issue in the case, and the frequency of Mercedes's use of Flovent had some tendency to make the District's theory more or less probable. The Flovent evidence thus met the basic relevance test, ER 401, and its admission therefore lay in the discretion of the trial court. Although the Mears correctly note that the jury could have found the evidence confusing or used it for some improper purpose, the trial court gave a proper limiting instruction, which we must assume, in the absence of evidence to the contrary, that the jurors followed. *Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 117, 249 P.3d 607 (2011). The trial court did not abuse its discretion in admitting the Flovent evidence.

In the same vein, the Mears assign error to the trial court's limiting instruction concerning Flovent, to which they timely took exception, and its refusal to instead give plaintiffs' proposed jury instruction 29. The proposed instruction reads in full:

> You are instructed that testimony and evidence concerning Mercedes Mears' past medical history has been allowed only for the limited purpose of her prior asthma condition. It has not been allowed to suggest that the use or non-use of medication such as Flovent at some time in the past, in any way caused or contributed to Mercedes Mears' death on October 7, 2008.
>
> You are also instructed that you are not to consider whether Mercedes Mears had a cold, or an upper respiratory tract infection in determining whether the defendants were negligent and whether such negligence was a proximate cause of Mercedes Mears' death on October 7, 2008.
>
> You are not to discuss this evidence when you deliberate in the jury room, except for the limited purpose of discussing Mercedes Mears' past asthma condition.

> You must disregard any evidence that is not supported by a proper evidentiary standard concerning medical issues, that is, "on a more probable than not basis" or "to a reasonable degree of medical certainty." Those terms are used interchangeably, under the requirement that you must determine all evidence under that standard of "what is more likely true, than not true."

> There has been no evidence submitted to you on a proper legal basis that the use or nonuse of Flovent by Mercedes Mears, or a cold or an upper respiratory tract infection, caused, or in some way contributed to her death on October 7, 2008, and it must therefore be fully disregarded.

CP at 3101. The instructions given by the court include much, but not all, of the language

proposed by the Mears:

> Medical testimony must establish the causal relationship of an injury and the alleged negligence of a defendant. Such testimony must be in terms of "probability." In other words, medical testimony in terms of possibility, speculation or conjecture is not sufficient. Medical testimony that an incident "could" cause, "can" cause, "may" cause, or "might" cause such an injury is not sufficient because these terms indicate a possibility, rather than a probability.

> You are instructed that testimony and evidence concerning Mercedes Mears' past medical history has been allowed only for the limited purpose of her prior asthma condition.

> You are not to discuss this evidence when you deliberate in the jury room, except for the limited purpose of discussing Mercedes Mears' past asthma condition.

CP at 3160-3161. The instructions given were consistent with the trial court's rulings on the

Flovent evidence, which, as discussed above, did not amount to an abuse of discretion.

However, "[w]hen evidence is admitted for a limited purpose and the party against whom

it is admitted requests an appropriately worded limiting instruction, the court is under a duty to

give the instruction." *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 623-24, 762 P.2d 1156

(1988). Here, the language in the proposed instruction that does not appear in the instruction

actually given purports to resolve factual matters and is broader than warranted by the court's

rulings. Thus, the court's refusal to give the requested instruction was consistent with its orders

20

in limine and was not an abuse of its discretion. The trial court did not err in refusing to give the plaintiff's requested instruction.

C.     The Trial Court Did Not Err in Denying the Motion for a New Trial Based on Counseling and School Discipline Records

The Mears also contend that the District's use of statements contained in Jeanette's counseling records, and in Jada's counseling and school discipline records, amounted to prejudicial misconduct and that the trial court erred in refusing to declare a mistrial or grant a new trial on that basis. The District contends that it generally used these records in accordance with the rulings of the trial court and that the Mears waived the issue by failing to properly object. Although the claim that the District committed misconduct has merit, the Mears fail to show sufficient prejudice, in the context of the entire trial, to warrant reversal.

The Mears base this misconduct claim in large part on the District's cross-examination of Kimberly Barrett, a family therapist the Mears' called as an expert witness on the issue of Jada's emotional distress damages. The District's counsel asked Barrett about Jada's anger problems prior to Mercedes's death, at which point the Mears objected. The court heard argument outside the presence of the jury and overruled the objection. Counsel for the District made an offer of proof, stating that he intended to explore whether the lack of attachment between Jeanette and Jada would also explain some of the psychological problems that Barrett had attributed to Jada's experiences on the morning of Mercedes's death. The District's counsel promised he would not "go into those areas that the Court excluded." VRP (Oct. 25, 2011) (Barrett) at 47. The Mears continued to object, and specifically asked whether the District intended to raise allegations that Jeanette had abused Jada, at which point the court cut off the discussion and brought the jury back in.

21

Counsel for the District soon began asking questions based on statements in Jeanette's and Jada's counseling records, including the following questions:

> Did [Jeanette] . . . tell you that in her treatment, one of her treatment goals for dealing with the attachment with Jada was to be able to tolerate the presence of Jada without feeling like her flesh was crawling or without coming loose in my stomach contents[?]
>
> . . . .
>
> Did she tell you her goal was in treatment, was so that she could end up being in the same room with her daughter Jada and not feeling like her skin was crawling[?]
>
> . . . .
>
> [D]id you read the reports that Jada had in her medical records where she claimed that her mom had told her that she was stupid, she was ugly, that why couldn't she be more like Mercedes[?]
>
> . . . .
>
> Now, you know, don't you, that Jada reported to her counselors and before this event an instance of what was described by the counselors as severe emotional abuse that she suffered from her mom[?]

VRP (Oct. 25, 2011) (Barrett) at 54-56. At that point the Mears again objected,[6] and the court held another discussion outside the presence of the jury.

During the course of that discussion, the Mears moved for a mistrial, pointing out that the court had excluded entirely Jeanette's counseling records from before Mercedes's death in ruling on the motions in limine. The District argued that the court's denial of a different motion in limine, in which the Mears had sought to exclude evidence of the lack of attachment between Jada and Jeanette, permitted such questioning. The Mears requested another offer of proof, and the District disclosed a number of additional questions.

Ultimately, the trial court never ruled on the Mears' objection to the emotional abuse question, which Barrett had not answered, and the District did not repeat it. The court denied the motion for a mistrial and ruled that the District's remaining questions were proper.

---

[6] The District claims in its brief that "the [Mears] did not object to the questioning" of Barrett on these topics. Br. of Resp't at 57. The record does not support this assertion.

The District correctly argues that the trial court's order on the Mears' motion in limine 4.15.9, allowed testimony concerning Jeanette and Jada's failure to bond. That order, however, also had a handwritten limitation requiring an offer of proof outside the presence of the jury. Similarly, the trial court's order on the Mears' motion in limine 4.13.1 contained a handwritten limitation requiring an offer of proof outside the presence of the jury for any evidence concerning counseling prior to Mercedes's death. The court's order on a motion in limine the Mears subsequently made also excluded evidence regarding "Jada Mears pre-death" and "post-partum issues RE: Jada."[7] CP at 2795.

The District did not make such an offer of proof before delving into the counseling records, and when the Mears objected, demanding such an offer, the District did not disclose the inflammatory nature of the questions it intended to pose, even when the Mears specifically asked whether the District planned to raise the allegations of abuse. Furthermore, the District presents no argument, and cannot reasonably claim, that the question concerning child abuse comported with the trial court's order on the Mears' motion in limine 4.15.2.1, which order expressly prohibited testimony or comment concerning allegations that Jeanette abused Jada.

The Mears plainly preserved their challenge to the comments relating to abuse, contrary to the District's contention, by moving in limine to exclude the subject, objecting contemporaneously, and moving for a mistrial. *See Sturgeon*, 52 Wn. App. at 622-23. A more difficult question is whether the Mears failed to preserve their misconduct claims as to the other questions concerning the degree of Jeanette's discomfort with Jada by failing to contemporaneously object.

---

[7] The court's oral ruling on the motion suggests, however, that the order applied only to Jeannette's claims, not Jada's negligent infliction of emotional distress claim.

23

We have held that "[w]hen a trial court makes a tentative ruling before trial, error is not preserved for appeal unless the party objects to admission of the evidence when it is offered." *Eagle Grp., Inc. v. Pullen*, 114 Wn. App. 409, 416-17, 58 P.3d 292 (2002). Conversely, where "the trial court has made a definite, final ruling, on the record, the parties should be entitled to rely on that ruling without again raising objections during trial." *State v. Koloske*, 100 Wn.2d 889, 896, 676 P.2d 456 (1984). Furthermore, were we to conclude that the relevant orders did not amount to a final ruling excluding the counseling records, where "misconduct is so flagrant that no instruction could have cured the prejudicial effect," a contemporaneous objection is not necessary to preserve the issue for review. *Sommer*, 104 Wn. App. at 171. Raising it in a motion for a new trial suffices.

Whatever relevance these matters may have had to the question of Jada's damages, the statements contained in the counseling records pose such an obvious risk of unfair prejudice that the decision of the District's attorney to paraphrase them in front of the jury, despite the court's pretrial orders requiring a preliminary offer of proof outside the jury's presence, was flagrant and ill-intentioned. The District could certainly have explored the issue of lack of attachment to her mother as an alternative explanation for Jada's psychological problems in a way less likely to expose Jeanette to the hostility of any parents on the jury. We agree with the Mears that the District's attorney committed misconduct by posing these inflammatory questions in violation of the trial court's orders.

The District also attempted to introduce the 2004 counseling intake form containing some of the inflammatory statements discussed above during the subsequent cross-examination of Jeanette. The Mears timely objected and again moved for a mistrial. The trial court sustained

24

the objection but denied the motion for a mistrial. Consequently, the Mears have sufficiently preserved the claims for review. We thus consider whether this misconduct prejudiced the Mears sufficiently to require reversal.

The Mears rely on *Garcia v. Providence Medical Center*, in which we held that the trial court had erred in admitting evidence that a woman claiming emotional distress due the loss of her baby in childbirth had previously had three abortions. 60 Wn. App. 635, 642-44, 806 P.2d 766 (1991). Because the abortion evidence did not change the expert witness's opinion, and no other expert testimony connected the prior abortions to Garcia's psychological problems, the court held that they did not even meet the basic ER 401 relevance test. *Garcia*, 60 Wn. App. at 644. We further held in *Garcia* that the error was so prejudicial, given people's strong feelings about abortion, it required reversal. 60 Wn. App. at 644. Particularly relevant here, we also noted that the same analysis applied to the admission of evidence that authorities had investigated Garcia for child abuse. *Garcia*, 60 Wn. App. at 644 n.2.

In *Salas*, our Supreme Court reversed a defense verdict on a negligence claim and ordered a new trial because the trial court admitted evidence that Salas resided in the United States illegally, his entrance visa having expired many years earlier. 168 Wn.2d at 667, 673-74. Although it recognized that the trial court had correctly ruled the evidence relevant to the issue of lost future earnings, the *Salas* court held that "the probative value of immigration status, by itself, is substantially outweighed by its risk of unfair prejudice" under ER 403, and the trial court had thus abused its discretion by acting for untenable reasons. *Salas*, 168 Wn.2d at 673. The court went on to note that "where there is a risk of prejudice and 'no way to know what

25

value the jury placed upon the improperly admitted evidence, a new trial is necessary.'" *Salas*, 168 Wn.2d at 673 (quoting *Thomas v. French*, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983)).

Here, as in *Garcia*, the questions posed by the District's counsel did not change the expert's opinion, and the District presented no expert testimony of its own as to the cause of Jada's psychological problems. The District did, however, introduce Barrett's deposition, in which Barrett admitted that a child's lack of attachment to a parent figure is "predictive of a lot of long-term consequences in the mental health of [the] child." VRP (Oct. 25, 2011) (Barrett) at 50. The questions thus arguably had some bearing on a matter at issue in the case.

Even though the statements and allegations in the counseling records have some relevance to the issue of Jada's damages, however, public attitudes concerning child abuse certainly pose as great a danger of unfair prejudice as a person's undocumented immigration status. Under *Salas*, the admission of such statements poses such a great risk of prejudice that the misconduct of the District's counsel in this regard might well merit reversal.

Unlike in *Salas*, however, here the trial court never actually admitted the potentially prejudicial statements into evidence. In addition, the trial court properly instructed the jury that "the lawyers' remarks, statements, and arguments are not evidence" and admonished the jurors to "disregard any remark, statement, or argument that is not supported by the evidence or the law as" explained by the court. CP at 3154. We must presume that the jury obeyed this instruction, a presumption that prevails until overcome by a contrary showing. *Nichols v. Lackie*, 58 Wn. App. 904, 907, 795 P.2d 722 (1990). The Mears have not made such a showing here.

Barrett never admitted any knowledge of the statements District's counsel paraphrased from the counseling and school records, and did not answer the question concerning Jada's

26

emotional abuse. Thus, we are left with a series of remarks by counsel that we must presume the jury disregarded, in accordance with the trial court's instructions. Although the better practice would have been to sustain the Mears' objection to the improper abuse question and instruct the jury to disregard it, we cannot say that the District's misconduct posed sufficient risk of prejudice to merit reversal.

D.      The Trial Court Did Not Err in Denying the Motion for a New Trial Based on Other Testimony Concerning Jeanette Mears

The Mears also allege that the District improperly (1) elicited testimony from Clover Creek Elementary School Principal Donald Garrick about a conversation in which Jeanette allegedly said that she should not have let Mercedes go to school on October 7 due to Mercedes having respiratory congestion; and (2) attempted to elicit testimony from Gibson that Jeanette had allegedly approached Gibson during the trial and insulted her. The Mears allege that Garrick's testimony violated the trial court's order on their motion in limine 4.15.1.1, prohibiting testimony that Mercedes should have been kept home from school the day of her death. The court sustained the Mears' contemporaneous objection lodged on that ground, however, and instructed the jury to disregard the remark. Similarly, when the District asked Gibson whether Jeanette had spoken to Gibson during the trial, the court sustained the Mears' objection and the jury never heard the substance of the alleged remark.

The Mears do not provide sufficient argument or analysis in their briefing to merit review of these issues, contrary to the requirements of RAP 10.3(a)(6). In particular, they make no attempt to show how these events resulted in prejudice. Because the jury presumptively disregarded Garrick's improper testimony, and did not hear the testimony the District sought to

elicit from Gibson, we fail to see how the Mears could show prejudice in any event. We decline to address the matter further.

E.     The Trial Court Did Not Err in Denying the Motion for a New Trial Based on the Claim of Coaching Witnesses

The Mears also contend that the District "coached" its witnesses "to be non-cooperative with [the Mears'] counsel in responding to . . . questions." Br. of Appellant at 91. Although difficult to evaluate from the record before us, the trial transcripts do contain some indication that the District may have engaged in such misconduct.

In at least two instances, counsel for the District made speaking objections in the presence of the jury during the Mears' examination of District employees, in which he stated that Mercedes had suffered an asthma attack. These statements arguably amounted to improper testimony from counsel and could have served to prompt the witnesses to answer questions in conformity with the District's theory of the case.

District employee Peggy Walker's testimony is particularly troubling in regard to allegations of coaching. As one of many examples, when the Mears asked Walker whether District policy required an emergency health care plan for students with life threatening allergies, Walker repeatedly refused to answer directly, asserting instead that the student's parents and doctor are entirely responsible. In fact, the District did have such a policy. The record discloses at least five instances in which the court admonished Walker to answer the questions, including during an extensive colloquy with Walker outside the presence of the jury.

The Mears direct our attention to *Storey v. Storey*, in which we upheld the grant of a new trial based on misconduct of the prevailing party following a trial in which witnesses repeatedly offered nonresponsive, prejudicial answers. 21 Wn. App. 370, 375-77, 585 P.2d 183 (1978). As

No. 43121-1-II

we noted, "[t]he cumulative effect of many errors may sustain a motion for a new trial even if, individually, any one of them might not." *Storey*, 21 Wn. App. at 374. *Storey*, however, involved a challenge to a trial court's decision to *grant* a new trial. Here, the trial court denied the Mears' motion. "[W]here the claimed grounds for a new trial involve the assessment of occurrences during the trial and their potential effect on the jury, we will accord great deference to the considered judgment of the trial court in ruling on such a motion." *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 226, 562 P.2d 1276 (1977). Although the record discloses several instances of improper conduct by the District over the course of the trial, in the context of the entire eight-week proceeding, these improprieties do not appear so prejudicial that they denied the Mears a fair trial. Under the circumstances presented here, we cannot say the trial court abused its discretion in denying the Mears' motion for a new trial.

## III. CONCLUSION

The trial court did not abuse its discretion in denying the Mears' post trial motion for judgment as a matter of law or a new trial. Because we affirm the judgment in favor of the District, we need not address the matters raised in the District's cross appeal.

BJORGEN, A.C.J.

We concur:

HUNT, J.

MAXA, J.

29